May it please the Court, Robert J. Williams, with Covington & Burling, for Appellant Augustine Fallay. I hope to reserve five minutes for rebuttal, and I intend to focus my argument on the claims under Section 1981 and 1983 against the City and County of San Francisco, but am prepared to address questions on any portion of the briefing by any of the parties. The first issue I would like to address is the unlawful detention claim under Section 1983, which was dismissed by Judge Breyer below, under the statute of limitations. The unlawful detention occurred, and Judge Breyer did correctly imply the 24-month statute of limitations, but failed to hold the action under California Government Code 945.3, which is applicable in this situation. Mr. Fallay's section 945.3 of the Government Code holds actions against the City and County of San Francisco or any California State or municipality based on actions against a peace officer during the pendency of a criminal prosecution associated with that officer's case. Charges were brought against Mr. Fallay following his detention in his home in July of 2005, and those proceedings continued for 16 months until their dismissal. Applying California Government Code 945.3. Scalia, when did he first raise the point you're making now? When was that first raised by your side? This was first raised in the opening appeal brief. Here? Correct, Your Honor. However, this was. And is your – am I right that your client is a law school graduate?  And that's why he heard about the statute of limitations. It is possible, Your Honor, although he may likely not have heard of California Government Code 945.3 or the specific principles that would apply to tolling the statute of limitations in a case like this. He was aware that the criminal prosecution should have given him more time to proceed with his civil action, which does capture the spirit of California Government Code 945.3. He just simply wasn't aware of the actual statutory provision he should rely on in order to make sure that it was raised before the district court. This is a statutory tolling ground as opposed to an equitable ground, and the Ninth Circuit has found it appropriate to sua sponte raise statutory tolling to defeat a statute of limitations defense not even raised by a party on appeal. So in this situation where he was proceeding pro se below, it would be appropriate to address the statutory tolling grounds in the first instance here. Well, if it were not pro se, would that still be true? I believe it would still be true, but there would be a higher burden placed to explain why it was not raised below. But why should we consider him pro se in the sense of the pro se cases when he's has a full legal education? Well, I think there would be a danger in placing too much weight on the specific circumstances that a pro se plaintiff comes to the court. He was never admitted to the bar, and many practitioners that appear before the court have been practicing for 7, 8, 9 years before they're fully prepared to litigate a case on the merits from start to finish. And just basing his being pulled out of the pro se litigants' liberal pleading standard. So someone on your theory, if someone with, say, who had a legal education, was admitted to the bar and had practiced for several years, but brought a complaint on his own behalf, and instead of saying, I appear to represent myself in the legal sense, said, I'm here pro se, he would get all the benefits of that special deference that we give to pro ses because they are legally unsophisticated. Is that correct? I wouldn't go that far, Your Honor. I was merely trying to explain that we have a bright line that starts and finishes a certain litigant being a member of the bar because it helps delineate exactly where that point is, where a litigant is presumed to be capable to look at the legal authorities that apply to a case and perform a diligent search of what those legal principles are. Okay. And the city has only argued in opposition to the grounds under 945.3 for a statutory tolling that the specific dates that the tolling should apply were not for the record or not in the record below. The city has requested additional notice of the document that does clarify when the charges were dropped against Mr. Fale, and we have requested additional notice of the information that was filed against Mr. Fale, and those two documents unequivocally establish what the dates were that tolling should apply. So the city didn't stop there? The city did make other arguments against it, but that is the main argument they have made against the application of the principle here. Do you have anything to say about the other arguments, the alternative grounds to affirm that the city has offered? The alternative grounds to affirm on the unlawful detention grounds specifically if there's a specific one that you would like me to address, I could do that, but I believe the main argument that was advanced under section 1983 for unlawful detention alone was that it was not properly within the statute of limitations because of 945.3. I know that they have specific arguments based on individual defendants that are being represented by the same council of the city and county of San Francisco here for that claim. Or the prosecutor, for example. Correct. So there is also the argument that was advanced that the prosecutor is entitled to immunity and that, by extension, the investigator working for the prosecutor who is present at the unlawful detention is afforded the same protection. At the very least, this is a question that could merit from development on remand from this Court. The specific role that was being fulfilled by Mr. Tang at that moment is one that is not clearly delineated, and the case law here does provide exceptions when someone is performing an investigative rather than a prosecutorial role. And so that issue, I believe, is proper for remand. As a general proposition, are you suggesting that we should only take up the arguments or the issues that the district court relied upon and leave the rest for the district court to deal with? Not as a general proposition, but there are certainly issues that are raised here that are pure issues of law that can be completely decided based on the record as it has been developed, and others where there is certainly room for the record to be more fully developed based on exactly what Mr. Tang's responsibilities were at that time, what the state of the investigation was at that time, whether it was already approaching the point where a decision to prosecute had been made versus simply being in an evidence-gathering phase. I believe that this leaves some question about where in the legal precedent his role would fall and, therefore, whether immunity would apply. I would like next to address the Section 1981 discriminatory termination claim. Here, there is no question and it's undisputed that the action was timely and the only ground that Judge Breyer relied upon in order to dismiss it was that it was outside of a two-year statute of limitations. The four-year statute of limitations is correct, as the city concedes, and, therefore, it is timely. And at the very least, this claim warrants remand on that ground. The city has advanced an alternative ground for affirmance, which is that the relationship that Mr. Falley had with the city was not contractual in nature, citing California Supreme Court case law that says that public employment in California is by statute and not by contract, and, therefore, contractual remedies do not apply. This disregards two key principles that would defeat that argument. The first is that the California Supreme Court has since developed that case law and clearly articulated that in certain circumstances, there should be found to be contractual remedies in employment relationships, and the main case I would direct the Court to for that is Retired Employees Association of Orange County v. County of Orange. And therein, the Court took up the issue of whether a memorandum of understanding between an employee's union and a California municipality could give rise to contractual rights, and the Court there found that as in any statutory bar prohibiting a city from entering into contractual relationships, there could be not only explicit contractual rights but implied contractual rights that flowed from it. And so, therefore, it's not a per se rule, as the city is hoping to advance, that no employee in California can ever maintain a claim under Section 1981 against their employing municipality. There is certainly room where in the case, for example, of a discriminatory termination, Section 1981 should apply, notwithstanding the fact that employment in California is structured by a statute rather than by a contract. I had a question that's not exactly on that point, but this may be a good point to raise it. He accepted $50,000 from developers for the city, the people who were dealing with the city. He accepted $50,000 from people dealing with the city? That is not an issue that or that is not something that's established in fact for purposes of this appeal. Well, we can take note of it. It's part of the record that's there. And how can that be explained except as something that I would call a bribe, but it's not a bribe? What was it? $50,000 from people that he was the inspector for. Well, the allegations, as they stand on the record, which is, should be treated as the record for purposes of resolution on a motion to dismiss. What's that? The facts that apply here for resolution of a motion to dismiss are as pleaded by Mr. Akali in his complaint. And there are no facts to establish that he accepted $50,000 as a bribe. The only thing that there is in the record is that he was given a loan from an individual which was later bought by developers who were working with him. Whether it was loan or whatever it was, he got the money from the developer, did he not?  He got the money from the developer, but then later on the developers purchased the loan without Mr. Falle's knowledge from the person that originally provided the loan. How would you describe that arrangement? I would certainly say that there was no bad character that was being imposed on Mr. Falle for the fact that a developer chose to independently purchase a loan that had been made to him. Was it an act of philanthropy? Certainly not an act of philanthropy. It was a loan that was provided by other individuals. What was the interest? I don't know. I don't believe that's been fully addressed in the record yet. There's nothing yet to establish those facts. Going on to the Section 1981 discriminatory termination, even if the State law were as the City and County of San Francisco has urged, that legal principle can only be applied under the test articulated in Burnett v. Gratton, which would require that the State law not be inconsistent with the laws and constitution of the United States. And here Section 1981 is a rehabilitatory statute that was designed to remedy invidious discrimination and the notion that a State could choose to arbitrarily structure its relationships in a way such as to immunize an entire set of employment relationships, which arguably do go to the heart of what Section 1981 was designed to remedy, would cause an irresolvable conflict between the purposes of the statute and California State law. I see that I'm at 4 minutes, and I'd like to reserve the remainder of my time unless there are any questions. Roberts. You may. We'll hear from the defendants. And I understand we've received the road map as to how you intend to divide the time. So we'll show the total time and we'll play as best we can to make sure everybody has an opportunity. Thank you, Your Honor. May it please the Court. My name is Kimberly Bliss, and I represent the City and County of San Francisco and the individually named city defendants. Although I appreciate counsel's attention, full attention on my clients, I am going to be speaking for about 7 minutes and then turning over the remainder of time to each of the co-defendants to make a few points in response to the reply. So let me take the Section 1981 argument first. And specifically what I'd like to address on it are some points that were raised for the first time in the appellant's reply brief, and that goes specifically to the Monell issue. The appellant has argued that in the absence of a ruling from this Court that Section 1981 applies to public employees, that we should remand this because there are factual issues that the district court should decide in the first instance. We think that we have adequately briefed the merits and that it could be decided by this Court, but we certainly have no issue with the fact that if the Court is going to remand on some issue down to the district court, we agree that this probably could use some more factual development at the district court and would welcome that opportunity. As respects specifically the 1981 claim, though, with respect to Monell, as in the claim against the city, in the reply brief, appellants argue that this is also an issue, specifically the Monell issue, that needs development in the district court. We don't agree with that. This is an issue that gets decided on motions to dismiss all the time, and the cases cited by the appellant for this proposition in the reply brief are easily distinguishable here. And I would like to focus on two of them. One is Hoffman – I'm sorry, one is Hopper v. City of Pascoe. That was a Ninth Circuit case from 2001 in which the Monell issue as to who was the final policymaker was remanded for some factual determination. It is distinguishable from this case in the following way. In that particular case, there was an arts program that was administered by the city. It was the first time it had ever been administered. There wasn't a fully written policy with respect to the arts program, and the city manager was implementing it, and there were some determinations made to exclude certain artists from the program, who then turned around and sued the city under the First Amendment. At the Ninth Circuit, they decided to remand it for a determination of who the final policymaker was because this was not a fully fleshed-out policy. There was nothing in the city charter or anywhere else to determine who actually was the final policymaker. Here, we have a city charter. The city charter specifically provides that the Civil Service Commission is the final policymaker for employment issues in the city and county of San Francisco. And in fact, our northern district, which examines this issue all the time, has several published cases that say exactly that. And since we didn't get a chance to respond to the reply, I'd like to give those cites to the Court right now. That would be Hoffman v. City and County of San Francisco, 870 F. Sup. 2nd, 799 Northern District of California, 2012, and Schiff v. the City and County of San Francisco, 816 F. Sup. 2nd, 798 at 812 and 13. Appellants also cited another case for the proposition that should be remanded for a determination as to who the final policymaker is. That was Bauman v. Block. In that case, there was a question whether or not the Los Angeles Board of Supervisors had delegated final policymaking authority to the sheriff. In that case, the charter in L.A. actually specifically allowed for delegation. It said that the Board of Supervisors or agents and officers acting under their authority could be the final policymaker, and there were factual issues as to who was the final policymaker in that case. Again, here, there are no, other than a very conclusory allegation in the Second Amended Complaint, that the acting director of the DBI, Ms. Lee, who is the individual that terminated the appellant, is a policymaker. There is no real citation to authority either in the city charter, which determines who is the final policymaker, or to other law that would establish that she was the final policymaker for purposes of Monell liability. So could the amend, the complaint be amended to include more specific allegations of that nature? And part of the difficulty here is that that's not the ground the district court passed on or based the dismissal on, and so the district court didn't have reason to consider whether an amendment of that nature might have saved the claim. Understood, Your Honor. I don't think so, because if it existed, I believe the appellant would have put it in their brief here on appeal. The only argument they have. Well, the way the case unfolded is the opening brief basically addressed the ground side of the district court. Your answer in brief noted some alternative bases to affirm, as you could say. Some of these issues wind up coming up in the reply brief, but it's pretty late in the game. Plaintiff, excuse me, appellant did raise it in passing in the opening brief. And what he argued was that it couldn't be disputed that the acting director of the department that had terminated Mr. Flay was a final policymaker and cited a couple local ordinances that that individual was the, quote, unquote, appointing officer for the city. So it's not that it wasn't addressed at all. It's that nothing in the opening brief, no facts were offered, no law was cited. Wait. We're on a motion to dismiss. So what is it they can offer up? I mean, admittedly, the case has changed because there's now very competent counsel representing the plaintiff, and previously it was pro se. Well, that's why I go back to the district court. If the dismissal wasn't on that basis, the district court didn't have reason to consider whether he should be telling pro se plaintiff, you need to go out and plead more specifically facts that will justify this Monell claim. That issue just didn't come up at the district court. You're correct. That's correct, Your Honor. And my response to that is twofold. One is they had more than an opportunity in both the opening brief and the reply brief to address that issue, and they didn't. If you specifically look at the reply brief, there is no law cited, no local law, no cases that have found that anybody other than the Civil Service Commission is the policymaking authority for the City of San Francisco, and they offer no additional facts that they could plead.  It can be decided by this Court. And it should be decided that the Civil Service Commission is the final policymaking authority. I see that, unfortunately, my seven minutes are up. I will be seating next to Mr. Mardikin, who represents the Federal defendants. Thank you. Thank you. May it please the Court. Good morning, Your Honors. Owen Mardikin for Federal defendants Witten and Carr. The plaintiff, Mr. Follay's, purported Bivens claim for malicious prosecution was waived. It would have been untimely in any event, and it was never adequately pled. I'd like to begin with reference to a case that I discuss at pages 14 and 15 of the Government Defendant's Brief called Jachetta v. United States. In that Ninth Circuit case, a plaintiff had brought several claims against the United States and some Federal agencies, most of which were dismissed. Then on appeal, the plaintiffs tried to claim that they had actually also raised a trespass claim. And this Court said there are two problems with that argument. The first is there was no trespass claim in the complaint below. The second problem is the argument was never raised in the district court, so it's waived. Both of those problems exist here. But there's a third problem as well. The argument was raised in the district court in terms of trying to amend the complaint to incorporate a Bivens claim. But not for malicious prosecution, Your Honor. And that's the key point. Bivens is, in some ways, it's an empty vessel. It has to be filled with a constitutional violation. I think he did attempt to raise Bivens claims for false arrest and with respect to the seizure. But those claims, as I think he understood below, were time-barred because they accrued back in 2005, which is why for the first time on appeal, the Bivens claim is trying to be refashioned into this malicious prosecution claim. There's no stated cause of action for malicious prosecution, but even the attempted cobbling together of various generic allegations against the FBI does not even state a Bivens malicious prosecution claim against my clients, Special Agents Witten and Carr. I'd like to talk, well, but in addition to the problem of waiver below, there's waiver here as well because the waiver issue was never addressed in the reply brief on appeal. In effect, it's been waived again. I'd like to talk briefly about the statute of limitations. Well, I see my time has run out, but I'll only say there is no tolling. Go ahead and finish your thought. We'll add a little time. Thank you, Your Honor. There is no statute of limitations tolling where there has been no service. Rules 3 and 4 work together. The cause of action may be begun by Rule 3, but under Rule 4, it has to be served as well. Weren't the individual defendants served? The individual defendants were served, but service was. Let's say the Bivens claim is against. But Rule 4i requires that service also be made on the United States. For a Bivens claim? For a Bivens claim. It was amended in 2000 to overrule this Court's decision in Vaccaro, which is what the plaintiff relies on in this case. So Vaccaro predates the amendment to the rule that now is very explicit that service has to be made on the United States. Thank you, Your Honors. And I would ask for affirmance. This is unlike the city claims. There is no remand necessary for these claims. Good morning, Your Honors. May it please the Court. Gary Selvin, appearing for First American and the individual employees. There has been a dearth of argument both in the briefs and before this Court about First American's role and the exposure to First American under 1983, and that's expected. The appellants concede that in order to sustain a claim, they have to establish the elements of malicious prosecution, establish that these individuals were State actors, and then sidestep the immunities that are provided to Mr. Dalton as the witness and Mr. Dalton as the individual who met with and was purportedly coached to testify by the DA. The challenges that they have are really insurmountable. On the first issue, First American and Mr. Dalton did not prosecute or have anything to do with the prosecution of the action. They cannot sustain a claim for malicious prosecution. In fact, in their own opposition, what they say is that the district attorney's office was the clearinghouse, that the district attorney and the FBI heard about the fire claim, approached First American, and asked for its file. And under the statutory scheme in California in dealing with potential insurance fraud claims, First American was obligated to turn over its claim file to the public entity requesting it and enjoys immunity therefore. At that point, the district attorney commenced with the prosecution of the various claims, including the insurance fraud claims. So there is no allegation or suggestion that Mr. Dalton was involved in bringing or continuing the criminal prosecution of the claim, and there are no allegations against First American other than those limited ones that deal with Mr. Dalton's conduct. The second issue is, acting under color of State law, there's no joint activity between First American and its employees on one hand and the State actors on the other. We've cited a number of cases that talk about, even if you supply false evidence or you make false reports, that you cannot be held to be a joint actor, and that would be under the Lauder decision and the Arnold-IBM decision. The only cases that they've cited that deal with a joint actor, a private individual or entity as a joint actor, are where you've got a special prosecutor who is involved in the investigation and bringing of the claim, or you have an individual who is acting as a quasi-prosecutor, where you have an investigation by a security guard company for a Las Vegas hotel that brings everything to the State actor and works with the State actor for the purpose of bringing the prosecution, the criminal prosecution. So there's no suggestion that there is any action under color of State law. And then finally, on the immunity, there's a case directly on point called Tear. Tear is where they have someone who supposedly conspired with others to present false testimony, essentially the exact same claim that is brought against Mr. Dalton and First American, and the Court found that there was testificatorial immunity that was provided to the witness, even if he was coached to provide false testimony or conspired to provide false testimony. So if you look at the individual acts against Mr. Dalton and First American, there's no joint activity, and everything that was done was under the cloak of immunity. Are there any questions? Roberts. Apparently not. Thank you. Thank you. I'm willing to cede my time to the others if they would like it. Well, an extra 20 or 30 seconds passed on. Good morning, Your Honors. May I please the card? My name is Crystal Lei, and I'm a teacher's assistant for San Francisco City College. Tony Fu and I mainly were percipient witness who testified in this matter about our dealings with Painter Foley. We are not government employees or otherwise involved in law enforcement. Our only role was to testify about what we knew. Foley's Section 1983 malicious prosecution came against us, Ms. Bell. First, it is barred by the statute of limitations. We have explained in our brief why this is the case. Second, neither Tony Fu and I at any time was a state actor or anything other than a private party who was a percipient witness. The law is clear that Section 1983 does not authorize a damage claim against private witnesses. See Briscoe v. LaHue, 460 U.S. 325, 1983. This Foley's claim against Fu and me in this action is, in fact, malicious prosecution. Foley already has litigated these issues with us in the state court, and the outcome was averse to him. Please see the judgment leaned on appellees Tony Fu and Crystal Lace joined a search of record at AE24. This record reflects our successful anti-slap action against Foley's $7 million fraud claim he prosecuted against us in 2009. This final judgment has proved that our participation as witnesses is protected by the anti-slap statute. Now he is attempting again to impose liability on us because of our role as witnesses who testify against him. Naming as defendants again and attempting to impose liability for that role is fervorous. For this reason and the others in my brief, I respectfully request that you dismiss Foley's appeal. Thank you, Your Honors. Thank you. Thank you. We'll hear from an appellant for rebuttal. Thank you, Your Honors. First, addressing the arguments made by the city and county of San Francisco, I'm not in a position to address the Hoffman or Schiff cases since they weren't brought to our attention prior to this. I can say, however, that on the basis of the Monell, applicability of Monell liability, as this Court noted, it was not addressed by Judge Barbaro. And while there are many areas where Mr. Foley's complaint may be a little bit light on facts, the area of complaints about discriminatory actions within the Department of Building Inspections is actually one that is not. And on page 52 of the opening brief, there is citation. The basic argument being made is it really doesn't matter because none of those individuals are the policymakers, that it's limited to the Civil Service Commission. I believe that looking at the complaint as a whole, it would be reasonable to infer based on the fact that there were numerous terminations or instances where individuals who were African American or black were terminated if those termination decisions ultimately needed to go through the Civil Service Commission. And this is a situation where those terminations which had discriminatory underpinnings, as alleged in the complaint, were allowed to stand. It would be reasonable to infer that there may be some ratification or a policy that is actually falling all the way up to allow such circumstances to persist. Looking at the Federal defendant's response, this is not like Juchetta. Here the issue was raised by the district court, as Your Honor has correctly noted, for the adequacy of the pleading. Here, looking at the complaint as a whole, there was a count for malicious prosecution, albeit a malicious prosecution under State law that was made against the Federal defendants as well as the municipal defendants. Looking at the existence of the Bivens claim on the one hand and the malicious prosecution count set out against those agents, this should suffice to establish under the liberal pleading standards afforded to a pro se litigant that they did intend to actually set forth a Bivens claim for malicious prosecution. On the service point, I will agree that Rule 4i does state that it would require service even for a Bivens claim against the U.S. government. However, courts in the Ninth Circuit have continued to apply the rules set out in Vicaro and so there is no Ninth Circuit precedent to date that says that anything less than what Mr. Follet did was required. Then looking at the issues raised by the insurance defendants, we disagree that there is this is a circumstance where the allegations of action under color of State law are not made out. The case of Lacey v. Maricopa, in that case, it was sufficient to allege that there was actions cited in the brief. This is a case where it did suffice to establish that there was allegations of a conspiracy or action that was between private actors and State actors, as well as descriptions of the specific factual circumstances that could allow one to infer that there was a joint action. I thought your allegations were that the DA was trying to pile up charges and so reached out for the insurers, coached them as to what they were going to say. How does that square with the argument you're making now? In this situation, looking at the allegations made under the Section 1985 conspiracy claim, then there are arguments that the insurance company defendants were themselves motivated by a discriminatory animus and so when given the opportunity to pursue Mr. Follet and there were facts that were alleged related to this in Mr. Follet's response to a motion to dismiss, which is in the further excerpts of record, then this is a case where even if when the DA originally approached the insurance company, there was not an action taken by the insurance company in order to further the prosecution's aims in the course of working together, then this actually became a commonality of purpose and a joint action. Which is nowhere alleged with any specificity in your, even in your brief, is it? I believe that it is taken up in the reply brief. I can look for a specific site for it, but we are closed at the end of the time. I'm staying at the insurance company. I know I'm taking over time. I'm troubled because the second amendment complaint actually does articulate a specific motivation. It's attributed to the insurance company, but it doesn't have anything to do with discrimination. It has to do with hard feelings about a prior claim. So are we supposed to not only give the pro se plaintiff the opportunity for extreme liberality reading, but disregard what he's actually said in the complaint? Because he attributes a different motivation to the insurance company. I believe this is a circumstance where looking at the actual situation when the first amendment complaint was dismissed does shine some light on it. Here, when the first amendment complaint was dismissed, the extent of the order simply said these claims are dismissed, and look at the motions dismissed to understand why that's the case, which is a very difficult factual record for a pro se litigant to look at to figure out exactly where their claims need to be remedied. So I believe it's reasonable in this case to see that when the second amendment complaint was filed, all he had before him was a stack of papers, yay deep, saying these are all the things that you have to address, and he did his best, but he's a pro se litigant. Well, that really doesn't answer my question. I mean, the second amendment complaint points to a different motivation. He doesn't say they're discriminating because of his ethnicity or African heritage. He says they're mad because of an extremely strained and hostile relationship, that's a quote from the second amendment complaint, that arose out of a prior claim and the company's treatment of a prior claim. So if his second amendment complaint says the motivation is they don't like me because I made a prior claim against them, how does that square with an allegation, or how can we read that to say that's a claim based on ethnic discrimination? Yes, Your Honor. So in this situation, you would not be able to read from the second amendment complaint that discriminatory animus here. It is facts that are alleged in Mr. Farley's response to the motion to dismiss, which is why the reason for the reversal would be that, or the remand would be that there are additional facts that would support his claim. Well, that starts to have the flavor of he'll plead whatever he needs to to get to the next stage. But are we supposed to close his eyes to what he actually said? I believe that these two specific factual circumstances are compatible and it is reasonable that the reason why they were angry at having to have had to have paid out the claim is because there was a discriminatory animus as pleaded in the motion to dismiss. And let me, I've taken you over. I would like you to speak to the individual developer defendants. Why is it they should still be in the case? They went to court. They went to State court before. They got a result. Why are they still here? So I believe the reason for that is that Mr. Farley understood following the trial and the facts that came out through the course of that, that there may have been improper cooperation based on some discriminatory animus or purpose through the course of that trial. And so for the first time, he became aware of facts that may have given rise to a Federal cause of action. And that's why it's being brought here. Anything theoretically that prevented him from pursuing such a cause of action in State court? Nothing theoretical. So why isn't he barred? Well, in this specific case, the reasons that he did not, the malicious prosecution count was never before the State court judge there. It was only going to his response to the lawsuit brought by the developers alleging his counts that there was breach of contract and that the loan should have been characterized as a, as something that did not need to be repaid because of the fact that it had previously been characterized as a bribe before the criminal prosecution. And so there wasn't a sufficient nexus to give rise to res judicata or claim preclusion because the malicious prosecution count was not actually before the judge there. Thank you, Your Honor. Mr. Williams, I understand you took this case through the court's pro bono representation project. We thank you for your service and thank your firm. We thank all lawyers for your helpful arguments in this very complicated case. The case is submitted.
judges: Rakoff, Noonan, Clifton